**UNITED STATES DISTRICT COURT**

**FOR THE**

**EASTERN DISTRICT OF LOUISIANA**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**IN RE: HURRICANE IDA CLAIMS**

**FIRST AMENDMENT TO CASE MANAGEMENT ORDER NO. 1**

**October 25, 2022**

**INTRODUCTION**

On August 29, 2021, Hurricane Ida struck near Port Fourchon, Louisiana as a Category 4 hurricane, battering southeastern Louisiana and inflicting catastrophic damage across this Court's jurisdiction. Hurricane Ida (the "Hurricane") was the second most damaging hurricane to ever hit Louisiana, behind only Hurricane Katrina.[1]

Since Hurricane Ida's landfall, the United States District Court for the Eastern District of Louisiana has become, and presumably will continue to be, inundated with insurance coverage-related litigation linked to the Hurricane. The damage and disruption to daily life and business throughout the jurisdiction of this Court are profound and are expected to interfere with the timely handling of the litigation arising from the Hurricane.

The Court desires, to the greatest extent possible within the powers granted unto it, to eliminate increased difficulties to the parties involved, to bring as much of this litigation

---

[1] https://www.kplctv.com/2022/04/05/final-report-ida-ties-it-strongest-winds-ever-hit-louisiana/. Hurricane Ida is sometimes referred to hereinafter as the "Hurricane" or "Disaster" and the causes of action arising thereunder are sometimes hereinafter referred to as the "Hurricane Cases."

to resolution as justly and expeditiously as possible, and to allow the citizens of this District to move forward with their respective recoveries.

With these goals in mind, the Court hereby approves this Case Management Order ("CMO") No. 1 to set forth the procedures for expedited discovery (the "Disaster Protocols") and to facilitate efficient resolution of these matters through the establishment of a streamlined settlement conference and mediation protocol, as described below.  This CMO establishes a mediation program, denominated as the Streamlined Settlement Program, which will include a panel of neutrals and a Program Administrator.  The Streamlined Settlement Program shall be overseen by the Magistrate Judges, with Chief Magistrate Judge Michael North presiding over day-to-day operations of the program, including the selection of the neutrals and Program Administrator.  The Administrator will assist with scheduling, assignment of neutrals, calendar management, data collection and analysis, and periodic reporting to the Court

## SECTION 1.  PROTOCOLS FOR INITIAL DISCLOSURES

The Court has studied the Disaster Litigation Initial Discovery Protocols recommended by a study committee and adopted by the United States District Court for the Southern District of Texas following Hurricane Harvey, as well as those enacted by the Western District of Louisiana following Hurricanes Laura and Delta.  These disaster protocols call for prompt sharing of specified information to promote uniformity, to facilitate prompt case evaluation and communication about individual cases/claims, and to facilitate expedited mediation.

Accordingly, this Court adopts the "Disaster Protocols" annexed hereto as Exhibit "A" and makes them applicable to all Hurricane Cases.  <u>Except as provided hereinafter, any discovery beyond that described in this Order is stayed.</u>  However, nothing in this Order shall be construed to limit the information that can be exchanged in any particular case and counsel for each party is encouraged and expected to provide any information that would reasonably be helpful to their adversary in evaluating the case for mediation purposes.

The disclosures and exchange of information required by the Disaster Protocols shall be due 30 days from the date that the last-responding defendant files responsive pleadings (or if falling on a later date, 30 days from an Order denying a timely motion to remand).  Any information not shared with opposing counsel at least 15 days prior to a mediation shall not be used at said mediation without leave of the presiding Magistrate Judge.  Additionally, 15 days before the scheduled mediation, the parties shall provide a supplemental disclosure, including any documents whose disclosure would have been required under the Initial Disclosure requirements that have come to light since the case was filed.

The parties are strongly urged to meet and confer in good faith about exchanging information they desire or intend to use even when disclosure is not technically or arguably required by this Order.

**SECTION 2.  PRIVILEGE**

Documents over which a privilege may <u>properly</u> be asserted include communications between counsel and client, documents created with the primary purpose of anticipation of

litigation,[2] and communications between or among counsel and their respective clients. As recognized by the United States District Court for the Eastern District of New York IN RE: HURRICANE SANDY CASES, "Documents routinely prepared in the ordinary course of business, including but not limited to adjusters' reports, and other expert analyses, including draft reports, are not privileged and should be produced."[3]

Therefore, this Court orders that any party withholding information or documents otherwise required to be produced pursuant to the Disaster Protocols produce a privilege log to opposing counsel <u>on or before the Disclosure Deadline</u> detailing all information or documents that it declined to produce on the basis of privilege. The log should include the author of the document, the recipient(s) of the document, a job or function description of every recipient of the document, the date of the document, the subject matter of the communication, and the specific privilege(s) asserted.

Any dispute concerning privileged items shall be submitted as expeditiously as possible to the presiding Magistrate Judge in such form as he or she may direct. The presiding Magistrate Judge's decision thereon shall be issued to the parties and the parties shall comply with it unless it is overturned by the District Judge following an appeal filed pursuant to Rule 72 of the Federal Rules of Civil Procedure within <u>five</u> days of the Magistrate Judge's decision.

---

[2] *United States v. El Paso Co.*, 682 F.2d 530, 542–43 (5th Cir. 1982).
[3] United States District Court for the Eastern District of New York, *In Re Hurricane Sandy Cases: Case Management Order No. 1*, p. 10, *available at* https://img.nyed.uscourts.gov/files/general-ordes/14mc41cmo01.pdf.

**SECTION 3.  STREAMLINED SETTLEMENT PROGRAM ("SSP")**

It shall be presumed that the litigants in Hurricane Ida cases will be subject to the SSP described in this CMO.  Within 15 days of the filing of the defendant's responsive pleading (or if later then within 15 days of either an Order denying a motion for remand or of entry of this Order) either party may petition the presiding Magistrate Judge to opt out of the SSP (Section 3 of this Order).  The parties may <u>not</u> opt out of the mandatory disclosures required by this CMO and described in Exhibit "A."  If a party shows good cause and is permitted to opt out, the case will then be promptly scheduled for a Federal Rule of Civil Procedure 16 conference and a specific case-management order shall be issued.  If the parties do not seek to opt out, they are electing to participate in the two-staged Streamlined Settlement Program, which is described as follows:

> A.   <u>First Stage: Principals/Experts Conference</u>

Within 30 days of the Disclosure Deadline in all Hurricane Cases, all parties shall conduct an informal settlement conference among the parties (*i.e.*, their principals), their counsel, and their respective experts/adjusters.  Within 15 days of the Disclosure Deadline, counsel for the plaintiff(s) and counsel for the defendant(s) shall meet to confer and discuss a mutually convenient time, date, and manner for the conference.  In light of the COVID-19 pandemic as well as the desire to resolve the Hurricane Cases as expeditiously as possible, these settlement conferences may be conducted by phone or other means of electronic audio or video communication, including but not limited to Zoom, Skype, or similar platforms.

To the extent it is impractical for a parties' principal to participate in the conference, counsel for that party must have full authority to resolve the case from their clients, <u>who</u>

shall be readily available by telephone throughout the conference. Disputes concerning participation in this conference should be brought to the attention of the presiding Magistrate Judge before the conference takes place. The Parties are strongly urged to use the forms attached to this CMO as Exhibits B (insured(s)) and Exhibit C (insurer(s)) in connection with the informal settlement conference and mediation.

B.    Second Stage: Mediation

Cases that do not resolve during the initial settlement conference shall be set for a formal mediation.

*1.    Appointment of the Panel of Neutrals*

The Court shall solicit applications for experienced and qualified mediators ("neutrals") and shall appoint a single panel of 30 neutrals, whose names shall be on a wheel from which appointments shall be made in rotation. The panel may be expanded if experience shows the need for additional neutrals to adequately service the caseload.

*2.    Scheduling of Mediation*

Within 75 days from the date that the last-responding defendant files responsive pleadings (or if falling on a later date, 30 days from an Order denying a timely motion to remand), the Program Administrator shall schedule a settlement conference with the presiding Magistrate Judge or direct the parties to mediation with a "neutral" from the Court-approved list. The presiding Magistrate Judge may elect to serve as neutral to conduct a settlement conference with the parties, in lieu of and/or subsequent to early mediation with an appointed neutral.

If any party perceives a potential conflict associated with the assigned neutral, counsel for that party shall immediately inform opposing counsel and thereafter inform the Chief Magistrate Judge or the Program Administrator, who will presumptively reassign the case to a different neutral. This provision should not be read to allow "neutral shopping" and, should the Court determine such is taking place, the responsible party or parties may be subject to sanctions.

The Chief Magistrate Judge, Program Administrator, or appointed neutral for the case may set a scheduling conference, or communicate with counsel about availability through other means, but shall seek to schedule the mediations in an expeditious manner at mutually convenient times and dates for all parties. It is the goal of the SSP to conduct mediations within 90 days of the neutral's appointment. If mediation is canceled with less than 14 days' notice by either party, the canceling party will pay a $500 fee to the assigned neutral.

3.      *Conduct of Mediation*

After scheduling of the mediation, counsel for each party shall submit confidential statements solely to the appointed neutral. The appointed neutral shall determine, after conferring with the parties, the length of the confidential mediation statements and the permissible number of exhibits attached thereto.

Plaintiff(s) shall be present in-person along with counsel (subject to accommodations approved by the Chief Magistrate Judge or the case's appointed neutral). Defense counsel shall also attend in-person. A representative from defendant(s) is encouraged to attend, but unless otherwise directed by the Chief Magistrate Judge the defendant(s)' representative

shall not be required to attend if counsel for the defendant has full authority to resolve the case. In addition, a representative of the defendant shall be readily available by telephone.

The presiding Magistrate Judge or a neutral from the court-approved list shall mediate all cases. To the extent agreed by the parties and the presiding Magistrate Judge or the case's appointed neutral this mediation or settlement conference may be conducted by phone or other means of electronic audio or video communication, including but not limited to Zoom, Skype, or similar platforms.

As part of this Streamlined Settlement Program, the neutral may allow each party to make opening statements but there shall be no live witness testimony. The parameters of any settlement conference presided over by a Magistrate Judge are fully within the discretion of that judge.

i.     List of Neutrals

The Court will, in due course, solicit applications, designate, and appoint neutrals to serve on the SSP panel and will publish that list as soon as practicable thereafter.

ii.     Neutral Training

The Court may, at its discretion, undertake to provide special training to the neutrals through one or more of its Magistrate Judges or as otherwise directed by the Chief Magistrate Judge. The Court, through its Magistrate Judges, may jointly form a plaintiffs' liaison committee and a defense liaison committee. If formed, the Court may solicit input and responses concerning

commonly occurring legal issues that the liaison committees, from experience, believe may arise in a large number of these cases, along with relevant case law or other authority addressing these issues. While the ultimate determination of any such common issue may well be fact driven, and the outcome of any legal issue will be determined by the Court, the Court may seek this information in order to educate and fully prepare the appointed neutrals with the hope of expediting the settlement process. The assigned Magistrate Judges may facilitate discussions by and among the appointed neutrals to promote, to the extent possible, consistency in the resolution of cases.

C.      Extensions of Time

The Chief Magistrate Judge may extend by 21 days any deadline specified in this Order upon a joint request or for good cause. No further extensions will be provided absent exceptional circumstances.

D.      Stay of Proceedings / Discovery

Except for the disclosures required by the Disaster Protocols, there shall be no formal discovery for any of the Hurricane Cases during the SSP. During the entirety of the SSP, all pretrial matters, discovery, and related activity shall be stayed for cases subject to this Order unless and until the Chief Magistrate Judge certifies that the parties for a particular Hurricane Case have complied with the requirements of this Streamlined Settlement Program.

Discovery on a limited issue or in exceptional circumstances may be authorized by the Chief Magistrate Judge. The exceptional circumstances as well as the scope and limits of

any permitted discovery shall be determined by the Chief Magistrate Judge. The parties should understand that, given the purpose of this Order, it is highly unlikely that any discovery outside that provided for in the Disaster Protocols will be permitted.

E.　　　Procedure following mediation

Once the mediation is concluded, counsel for the parties shall notify the Chief Magistrate Judge and/or the Program Administrator, advising whether the mediation was successful and whether further discussions are necessary or advisable to resolve the case. In case of the latter circumstance, the parties may request that the presiding Magistrate Judge assist in additional settlement discussions. At the presiding Magistrate Judge's discretion, further mediation or a settlement conference may be ordered, or the case may be designated to have the stay lifted and returned to the docket for scheduling.

F.　　　Retroactive Application to Pending Cases

Following adoption of this CMO, the Court will issue an Order providing the opportunity for parties in previously filed cases to opt-in to the SSP by agreement of the parties with consent of the presiding District Judge.

SECTION 4.  APPOINTED NEUTRALS

A.　　　Compensation of Appointed Neutrals

The appointed neutrals under the SSP shall be compensated in the amount of $400 per hour and all actual expenses of the appointed neutrals, including but not limited to travel,

meeting rooms, telephone, and electronic audio or video conference means. No administrative fee may be charged by any neutral.

Unless otherwise directed by mutual agreement of the parties or as otherwise directed by the Chief Magistrate Judge, all of the above fees and expenses shall be paid twenty-five (25%) by the plaintiff(s), and the other seventy-five (75%) of the invoiced amounts shall be paid by the defendant(s). The cancellation fee referenced under Section 3.II.A will be paid by the canceling party or parties.

B.      Role of Appointed Neutrals

The appointed neutrals may communicate ex parte with the presiding and/or Chief Magistrate Judge without providing notice to the parties, including communication certifying that the parties have complied with the requirements of the SSP.

The presiding and/or Chief Magistrate Judge and appointed neutrals may initiate contact and communicate with counsel for any party as he or she deems appropriate with respect to the efficient administration and management of the SSP.

The presiding and/or Chief Magistrate Judge and appointed neutrals, the parties, and those assisting the foregoing shall be bound by the confidentiality of the settlement discussions.

C.      Notice to the Chief Magistrate Judge

If no party to a Hurricane Case petitions to opt out, then the parties shall jointly send notification of participation in the SSP to the Chief Magistrate Judge within seven days

following the expiration of the opt out deadline in their case (*i.e.,* 22 days from the last defendant filing a responsive pleading).

## SECTION 5. COURT-APPOINTED UMPIRES REQUIRED UNDER CERTAIN POLICIES

If an insurance policy concerning a claim involving the Hurricane provides for court appointment of a neutral or third-appraiser for valuation disputes, hereinafter referred to as an "Umpire," any request for the appointment by this Court of an Umpire shall be made in writing no later than 14 days following the filing of the defendant's responsive pleading. Any motion or request for this Court's appointment of an Umpire shall be submitted to the Chief Magistrate Judge. The deadline may be extended by the Chief Magistrate Judge in exceptional circumstances.

An Order concerning the Umpire's appointment and any applicable deadlines shall be issued to the parties by the Chief Magistrate Judge and shall be complied with unless the Order is overturned by the District Judge following an appeal filed under Federal Rule of Civil Procedure 72 within **five** days of the Magistrate Judge's decision. The Court may elect to issue public notice for interested parties to apply for consideration of appointment as Umpires pursuant to this Section.

## SECTION 6. COURT SUPERVISION

The Mediation Program shall be overseen by the Magistrate Judges, with the Chief Magistrate Judge presiding over day-to-day operations of the program. The Court shall appoint a Program Administrator to assist with scheduling, assignment of neutrals, calendar management, data collection and analysis, and periodic reporting to the Court. The Court

shall solicit applications for an experienced and qualified individual or firm to serve as Program Administrator.

The costs of the Program Administrator shall not exceed $350/case and shall be assessed against the parties in the same percentages as the mediation costs (75% to defendants, 25% to plaintiffs).

**SECTION 7.  SSP FEES UNRECOVERABLE**

Fees and costs paid to the appointed neutral or to the Program Administrator by the parties shall **not** be recoverable as taxable costs if the case is placed back on the docket and resolves by dispositive motion or judgment after trial.

SO ORDERED, this 25th day of October, 2022

For the en banc court:

NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

# EXHIBIT A

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF LOUISIANA

## ORDER FOR FIRST-PARTY INSURANCE PROPERTY DAMAGE

## CASES ARISING FROM HURRICANE IDA

This court is implementing this INITIAL DISCOVERY PROTOCOLS FOR FIRST-PARTY INSURANCE PROPERTY DAMAGE CASES ARISING FROM DISASTERS.

These Disaster Litigation Initial Discovery Protocols ("Disaster Protocols") apply to all cases involving first-party insurance property-damage claims arising from Hurricane Ida ("Hurricane Cases"). If any party believes that there is good cause to be excused from any provision of the Disaster Protocols, in whole or in part, that party may raise the issue with the presiding Magistrate Judge.

Within 30 days after the last-responding defendant's submission of a responsive pleading or motion (or, if falling on a later date, 30 days from an Order denying a timely motion to remand), the parties must provide to one another the documents and information described in the Disaster Protocols for the relevant time period. This obligation supersedes the parties' obligations to provide initial disclosures under FRCP 26(a)(1). The parties must use the documents and information exchanged under the Disaster Protocols to prepare the FRCP 26(f) discovery plan.

The parties' responses to the Disaster Protocols must comply with FRCP 26(e) regarding the duty to supplement and with FRCP 26(g) regarding certification of responses. As stated in the Protocols, this Initial Discovery is not subject to objections, except on the grounds of attorney-client privilege or work-product protection. Documents or information withheld based on an attorney-client privilege or work- product protection claim are subject to FRCP 26(b)(5) and the requirements of CMO No. 1.

INITIAL DISCOVERY PROTOCOLS FOR FIRST-PARTY INSURANCE

PROPERTY DAMAGE CASES ARISING FROM HURRICANE IDA


PART 1: INTRODUCTION AND DEFINITIONS.

A.      Definitions. The following definitions apply to cases under the Disaster Protocols.

1.      Claimed Loss. "Claimed Loss" means the loss or damage that the Insured seeks to recover from the Insurer in the litigation.

2.      Event. "Event" means the disaster alleged to have caused the Insured's Claimed Loss.

3.      Identify (Natural Persons). When referring to natural persons, to "identify" means to give the person's: (i) full name; (ii) present or last known address and telephone number; (iii) email address; (iv) present or last known place of employment; (v) present or last known job title; and (vi) relationship, if any, to the parties.  Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent requests to identify that person.

4.      Identify (Non-Natural Persons or Entities).  When referring to a corporate entity, partnership, or other unincorporated association, to "identify" means to give the: (i) corporate or entity name and, if known, the trade or other names under which it has done business during the relevant time period; (ii) state of incorporation or registration; (iii) address of its principal place of business; (iv) primary phone number; and (v) internet address.  Once a corporate or other business entity has been identified in accordance with this subparagraph, only the name of that entity needs to be listed in response to subsequent requests to identify that entity.

5.      Insurer.  "Insurer" means any person or entity alleged to have insured the Property that is the subject of the operative complaint, unless otherwise specified.

6.      Insured. "Insured" means any named individual(s), corporate entity(ies), partnership(s), or other unincorporated association(s) alleging property damage as an Insured in the litigation, or asserting a claim under an assignment.

7.      Loss. "Loss" means damage to the Property caused by the Event.

8.      NFIP Claim. "NFIP Claim" means a claim the Insured asserts in the litigation for coverage under a National Flood Insurance Program insurance policy.

9.     Other Insurance.  "Other Insurance" means any insurance policy, other than the Policy in force on the date of the Event, that covers or potentially covers the Property or the Claimed Loss.

10.    Policy.  "Policy" means the insurance policy alleged to cover some or all of Insured's Claimed Loss that is the subject of the Insured's claim in the litigation.

11.    Property.  "Property" means the property (building or contents) that the Insured claims coverage for under the Policy in the litigation.

B.    Instructions.

1.     The relevant time period for this Initial Discovery begins on the date immediately before the Event (August 29, 2021) and ends 15 days prior to mediation, unless a different time period is indicated with respect to a specific production obligation as set out in Part 2 or Part 3 below.  The first disclosure is due 30 days from the date the defendant files responsive pleadings or the Court denies a timely file motion to remand.  A supplemental disclosure must be made 15 days prior to the mediation.

2.     This Initial Discovery is presumptively not subject to any objections except for attorney-client privilege or work-product protection.  Documents withheld based on a privilege or work-product protection claim are subject to FRCP 26(b)(5).  A detailed privilege log is required as specified in the applicable Case Management Order or any subsequent orders of the Court.

3.     If a partial or incomplete or "unknown at this time" answer or production is given to any disclosure requirement in these Disaster Protocols, the responding party must state the reason that the answer or production is partial, incomplete, or unknown and when supplemental information or documents providing a complete response will be produced.

4.     For this Initial Discovery, a party must disclose information and documents that the disclosing party has in its possession, custody, or control and that are reasonably available.   This Initial Discovery is subject to FRCP 26(e) on supplementation and to FRCP 26(g) on certification of responses.  This Initial Discovery does not preclude either party from seeking additional discovery later under the rules.

5.     This Initial Discovery is subject to FRCP 34(b)(2)(E) on the form of production.

6.     This Initial Discovery is subject to the attached Interim Protective Order unless the parties agree or the court orders otherwise.  The Interim Protective Order will remain in place until and unless the parties agree on, or the court orders, a different protective order.  Absent party agreement or court order, the Interim Protective Order does not apply to subsequent discovery.

7.      Within 14 days after the entry of this Order, the Parties will meet and confer on the format (e.g., TIFF/text, searchable pdf, or Excel) for the production of documents under these Disaster Protocols.  This will not delay the timeframes for Initial Discovery, absent an Order of the Court, nor will production in one format preclude requesting production in another format, if applicable rules of discovery allow for such.

PART 2:  INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURED.

A.      Timing.  Unless the court orders otherwise, the Insured's Initial Discovery responses must be provided within 30 days after the Insurer has submitted a responsive pleading or motion (its first filing in this Court in response or answer to the plaintiff's claim), or within 30 days of the denial of a timely motion to remand if that date is later.

B.      Information to be produced by the Insured:

1.      A description of the Insured's ownership or other interest in the Property.

2.      The address of the Property (or location of movable Property) on the date of the Event.

3.      The name of each Insurer and all policy numbers for each Policy or Other Insurance held by or potentially benefitting the Insured or the Property on the date of the loss, including relevant policy and claim numbers for any claims.

4.      The identity of any current mortgagee or other known lien holder.

5.      A computation of each item or type of Claimed Loss, including content claims if in dispute.  When the Policy requires, the computation should reasonably identify or itemize price and quantity of materials.

6.      A description/list of any payments received under the Policy relating to the Event.  The source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss should be identified.

7.      The identity of any grant or other similar program that the Insured applied for after the Event, including a Small Business Administration loan, seeking payment for all or any part of the Loss.

8.      The identity of the public or other adjusters, estimators, inspectors, contractors, engineers, or other persons engaged by or on behalf of the Insured relating to the Claimed Loss.

9.      With respect to any Other Insurance, all policy numbers, the name of each insurer, and claim and docket numbers for any claims made for coverage by the Insured on the same Property at issue in this litigation.

10.    The identity of the source and amount of any payments received after the Event from Other Insurance, or any other source, for all or any part of the Loss.

11.    A general description, including the court and docket number, of any other lawsuits, if any, arising from the Event relating to the Property.

12.    A general description of any known preexisting damage to the Property relating to the Claimed Loss.

13.    A general description of any claims for property damage or lawsuits resulting from property damage in the past 10 years relating to the Property.

14.    Details of any sale, transfer, or foreclosure of the Property after the Event.

C.    Complete and unaltered copies of the following documents to be produced by the Insured:

1.    Documents relating to the Claimed Loss, including loss estimates; adjuster's reports; engineering reports; contractor's reports; estimates, bids, plans, or specifications regarding repair work (whether planned, in progress, or completed); photographs; videos; or other materials relating to the Claimed Loss, along with any receipts, invoices, and other records of actual costs to repair or replace the Claimed Loss.  This shall include all reports or analyses, including draft reports, prepared on behalf of or for Insured.

2.    Proofs of loss for the Claimed Loss.

3.    Documents relied on by the Insured in generating any proof of loss required or provided under the Policy.

4.    Written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, the Property, or damages, or otherwise relating to the Insured's claim.

5.    Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Loss.

6.    Written communications, photographs, or estimates of damages sought from or paid by any other insurer related to the Event.

7.    The insurance policy with respect to any Other Insurance, and the claim numbers for claims made to recover Loss to the Property relating to the Event.

8.    Appraisals or surveys of the Property condition within five years before, or any time after, the Event.

9.    If there has been an appraisal under the Policy, documents relating to the appraisal process.

10.     For NFIP Claims, communications to and from FEMA, the Insurer, and the Insured relating to the Claimed Loss or the Property before the litigation was filed.

11.     For NFIP Claims, documents relating to an administrative appeal under 44 C.F.R. § 62.20.

12.     Any other document(s) on which the Insured relies to support the Claimed Loss.

PART 3: INFORMATION AND DOCUMENTS TO BE PRODUCED BY THE INSURER.

A.     Timing.  Unless the court orders otherwise, the Insurer's Initial Discovery responses must be provided within 30 days after the Insurer has submitted a responsive pleading or motion (its first filing in this Court in response or answer to the plaintiff's claim), or within 30 days of the denial of a timely motion to remand if that date is later. The disclosures related to Insurers and the use of the term "Insurer" under this Part shall extend to anyone acting for or on behalf of the Insurer in relation to the claim of the Insured, including the employees, contractors, and agents of either the Insurer or anyone providing services to the Insurer related to the Insured's claim or Claimed Loss.

B.     Information to be produced by the Insurer:

1.     If there is a dispute over coverage, in whole or in part, an explanation of the Insurer's reason for the denial of coverage, including:

(a) Any exclusions or exceptions, or other coverage or legal defenses;

(b)     The factual basis for any exclusion, limitation, exception, or condition-based dispute or defense;

(c)     Whether there is also a dispute as to the value or amount of the Claimed Loss;

(d)     Any other basis on which coverage was denied.

2.     If there is a dispute over all or part of the valuation, an explanation of the Insurer's basis for disputing the value or amount of the Claimed Loss, including:

(a)     The Insurer's description of the nature of the dispute;

(b)     The amount the Insurer disputes and the basis for that dispute, including any applicable Policy provisions that the Insurer alleges or believes are relevant to the dispute; and

(c)     The amount the Insurer agrees to pay, if any, with respect to any undisputed part of the Claimed Loss.

3.     Any Policy terms or conditions that the Insurer alleges the Insured failed to comply with, including conditions precedent or other terms.

4.      Any payments previously made under the Policy relating to the Event.

5.      A general description of any other basis for nonpayment of the Claimed Loss, in whole or in part.

6.      Any other Event-related lawsuits filed for the Property or the Insured.

7.      the identity of the adjuster(s) who handled the claim.

8.      The identity of the individual(s) who evaluated, recommended, made, approved, or rejected the claim decision.

9.      The identity of the field personnel, estimators, inspectors, contractors, engineers, or other persons who participated in any investigation of the claims or the claims process, had any part relating to Insurer's evaluation process for the claims, or upon who the Insurer relied upon or received information from concerning Insurer's evaluation process or claim decision; and identify anyone who had any role in drafting, editing, reviewing, or approving any report(s), evaluation(s), or inspection(s) on behalf of Insurer involving the Insured's claim.

10.     If preexisting damage is at issue in the litigation, a general description of any prior claims in the past ten years for the Property.

C.     Complete and unaltered copies of the following documents to be produced by the Insurer:

1.      The entire claim file maintained by the Insurer.

2.      The complete Policy in effect at the time of the Event.

3.      Assessments of the Claimed Loss, including: loss reports, expert reports that contain any description or analysis of the scope of loss or any defenses under the Policy, damage assessments, adjuster's reports, engineering reports, contractor's reports, and estimates of repair or replacement.  This shall include all reports or analyses, including all drafts, prepared as part of the evaluation or claims process involving Insured's claim by Insurer, or documents or records reviewed in any way in connection with Insurer's handling of the claim.

4.      Photographs and videos of the Property taken for the purpose of documenting the condition of the Property, including photographs and videos of the Claimed Loss.

5.      Any other evaluations of the Claimed Loss.

6.      Documents containing recordings, transcripts, or notes of statements, conversations, or communications by or between the Insurer and the Insured relating to the Event.

7.      Any claim log, journal, diary, or record maintained by the Insurer relating to the Claimed Loss.  This includes all written records, written communications, records

of oral communications, reports, audits, or other records, including any documents, envelopes, logs or other documents evidencing when Insurer came into possession of any such records, regarding any aspect of the Insured's claim or that are in any way relating to the Insurer's investigation into the Claimed Loss, Insurer's processing of Insured's claim (including adjustment, evaluation, and handling), or Insurer's claim decision.

8.     The complete underwriting file maintained by the Insurer relating to the Property, its condition, or coverage.

9.     Proofs of loss for the Claimed Loss.

10.    If there has been an appraisal under the Policy, all documents relating to the appraisal process.

11.    Any manuals, policies, directives, guidelines, instructions (whether written, electronic, or otherwise), literature, or similar written materials that would pertain to the Claimed Loss, or to similar types of claims generally such that they would therefore be applicable to the Hurricane Cases including the Insured's claim. This includes any document that Insurer relied upon, or intends to rely upon, pertaining to industry guidelines, standard practices, or recommended practices for adjusting first party claims.

12.    For non-NFIP Claims, written communications exchanged between the Insured and Insurer that refer or relate to Insured's Claimed Loss, Property, or damages, or otherwise relating to the Insured's claim.

13.    For NFIP Write Your Own Claims, communications to and from FEMA, the Insurer, and the Insured relating to the Claimed Loss or the Property before the litigation was filed.

14.    For NFIP Direct Claims, written communications exchanged between the Insured and FEMA claims-handling personnel referring to the Insured's Claimed Loss, Property, or damages, or otherwise relating to the Insured's claim.

15.    For all NFIP Claims, documents relating to the administrative appeal under 44 C.F.R. § 62.20.

16.    Any other document(s) on which the Insurer relies to support its defenses.

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

**IN RE: HURRICANE IDA CLAIMS**

**EXHIBIT "B"**

**FORM FOR ISC DEMAND BY INSURED**

| Category | Policy Limits | Damages | Prior Payments | ISC Demand |
|---|---|---|---|---|
| **A. Property** | | | | |
| **B. Other Structures** | | | | |
| **C. Personal Property** | | | | |
| **D. ALE** | | | | |

Claim for Statutory Bad Faith Penalties on Late Prior Payments    _____

Claim for Statutory Bad Faith Penalties on ISC Demand    _____

Claim for Attorney's Fees    _____

Total Claim for Other Damages (describe below):    _____

TOTAL DEMAND    _____

This demand is for the purposes of settlement/mediation only and is covered by mediation confidentiality. It may not be used for any other purpose. It is rescinded if the case does not settle as part of the SSP. The plaintiff reserves the right to modify the demand based on changes in circumstances or supplemental information. The plaintiff reserves the right to asserts claims for expert costs, judicial interest, and mental anguish/ economic damages and related penalties pursuant to R.S. 22:1973 at any trial of this matter even if they are not listed above.

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

**IN RE: HURRICANE IDA CLAIMS**

**EXHIBIT "C"**

**FORM FOR ISC – PRIOR PAYMENTS BY INSURER**

| Category | Policy Limits | Prior Payments | Date(s) |
|---|---|---|---|
| A. Property | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| B. Other Structures | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| C. Personal Property | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| D.  ALE | | | |
| | | | |
| | | | |
| | | | |
| | | | |

OTHER PAYMENTS _____

OTHER DETAIL: _____

TOTAL PAYMENTS: _____

**UNITED STATES DISTRICT COURT**

**FOR THE**

**EASTERN DISTRICT OF LOUISIANA**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**IN RE: HURRICANE IDA CLAIMS**

**INTERIM PROTECTIVE ORDER**

**(Applies to all cases)**

The Disaster Litigation Initial Discovery Protocols ("Disaster Protocols") are designed to achieve more efficient and targeted discovery. Prompt entry of a protective order will allow the parties to begin exchanging documents and information without delay. This Interim Protective Order will remain in place until the parties agree to, or the Court orders, a different protective order. The parties may agree to use the Interim Protective Order throughout litigation, but absent agreement or court order, the Interim Protective Order will not apply to subsequent discovery.

The Court orders that the following restrictions and procedures apply to certain information, documents, and excerpts from documents and information the parties exchange in response to the Disaster Protocols:

1.      Any party may designate as "Confidential" any document, or information contained in or revealed in a document, provided in response to the Disaster Protocols or, if applicable, in subsequent discovery, if the party determines, in good faith, that the designation is necessary to protect the party. Information and documents a party designates as confidential shall be stamped ''CONFIDENTIAL." Confidential information or documents are referred to collectively as "Confidential Information."

2.      Unless the Court orders otherwise, the Confidential Information disclosed will be held and used by any person receiving the information solely in this litigation.

3.      If a party challenges another party's Confidential Information designation, counsel must make a good-faith effort to resolve the dispute. If that is unsuccessful, the challenging party may seek resolution by the presiding Magistrate Judge. Nothing in this Interim Protective Order is an admission by any party that Confidential Information disclosed in this case is relevant or admissible. Each party specifically reserves the right to object to the use or admissibility of all Confidential Information disclosed, in accordance with applicable law and court rules.

4.      Information or documents designated as "Confidential" must not be disclosed to any person, except:

        a.      the requesting party and counsel, including in-house or agency counsel;

b.      employees of counsel assigned to and necessary to assist in the litigation;

c.      consultants or experts assisting in the prosecution or defense of the litigation, to the extent deemed necessary by counsel;

d.      any person from whom testimony is taken or is to be taken in this litigation, but that person may be shown the Confidential Information only in preparation for, and during, the testimony and may not retain the Confidential Information; and

e.      The judge, the Court staff, including the clerk, case manager, court reporter, mediator, Program Administrator, or other person with access to Confidential Information by virtue of his or her position with the Court, or the jury.

5.      Before disclosing or displaying Confidential Information to any person, a party must:

a.      inform the person of the confidential nature of the information and documents; and

b. inform the person that the Court has enjoined the use of the information or documents for any purpose other than this litigation and has enjoined the disclosure of that information or documents to any other person.

6.      The Confidential Information may be displayed to and discussed with the persons identified in Paragraphs 4(c) and (d) only on the condition that before any such display or discussion, each person must be asked to sign an agreement to be bound by this Order in the form attached as Exhibit 1.  If the person refuses to sign an agreement in the form attached, the party seeking to disclose the Confidential Information may seek relief from the Court.

7.      The prior disclosure of a document or information without designating it as "Confidential Information" does not waive the right to designate the document or information as Confidential Information if the document or information is designated under this Order.

8.      Documents or information filed with the Court that are subject to confidential treatment under this Order and any pleadings, motions, or other papers filed with the Court disclosing any Confidential Information, must be filed under seal to the extent permitted by the law, local rules, or court orders, and must be kept under seal until the Court orders otherwise.  To the extent the Court requires any further act by the parties as a precondition to filing the documents or information under seal, the party filing the document or information is responsible for satisfying those requirements.   If possible, only the confidential parts of documents of information filed with the Court will be filed under seal.

9.      At the conclusion of this litigation, the Confidential Information and any copies must be promptly (and in no event later than 60 days after entry of final judgment no longer subject to appeal) returned to the producing party or certified as destroyed, except that the parties' counsel may retain their working files on the condition that those files will remain

confidential.  Materials filed in the Court will remain in the file unless the Court orders their return.

10.     Producing documents or information, including Confidential Information, in this litigation does not waive attorney-client privilege or work-product protection for the documents or information, pursuant to FRE 502(d).  This Order does not diminish the right of any party to apply to the Court for a different or additional Protective Order relating to Confidential Information, to object to the production of documents or information, to apply to the Court for an order compelling production of documents or information, or to modify this Order.  Any party may seek enforcement of this Order and the Court may sanction violations.

        SIGNED on this 14th day of September, 2022, at New Orleans, Louisiana

        _____
        U.S. Magistrate Judge Michael B. North

**EXHIBIT 1**


I have been informed by counsel that certain documents or information to be disclosed to me in connection with Case Number _____ have been designated as confidential.  I have been informed that any of the documents or information labeled "CONFIDENTIAL" are confidential by Order of the Court.

I hereby agree that I will not disclose any information contained in the documents to any other person.

I further agree not to use this information for any purpose other than this litigation.

DATED: _____

SIGNED: _____

IN THE PRESENCE OF (ATTORNEY): _____

**UNITED STATES DISTRICT COURT**

**FOR THE**

**EASTERN DISTRICT OF LOUISIANA**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**IN RE: HURRICANE IDA CLAIMS**

## ADDENDUM TO CMO NO. 1 FOR CASE MANAGEMENT OF LAWSUITS FILED BY FORMER CLIENTS OF MCCLENNY MOSELEY & ASSOCIATES

Since March 2023, this Court has been grappling with the fallout from the misconduct and suspensions of the attorneys of McClenny Moseley & Associates ("MMA"). To date, over 400 cases filed by that firm in this Court on behalf of Hurricane Ida victims remain stayed as a result of that misconduct and those suspensions. In recent weeks, the Court has seen an increase in the volume of motions to substitute counsel and lift the stay in cases involving former MMA clients who have retained new counsel. It appears, however, that these cases comprise but a fraction of the total number of un-filed claims for which MMA sent letters of representation to insurers regarding Hurricane Ida damages.

According to information provided to the Louisiana Office of Disciplinary Counsel by former MMA attorney, R. William Huye, III, there may be as many as 8,000 former clients of that firm who have made claims with their respective insurer but who have not yet filed a lawsuit in this or any other Court. The prospect that such a staggering number of un-filed claims may still exist with just over 60 days until prescription runs on those claims is a cause of great concern to the Court, as it portends a similarly staggering number of new lawsuits being filed in courts across this District (including this one) in the next 60 days. The adverse

impacts on the Courts, litigants, and counsel of such a mass filing are legion, but this Court intends to manage them to the greatest extent possible.

It is apparent that many former MMA clients remain unrepresented.  While the Court is aware of substantial efforts by the bar of this District to address that problem by signing new agreements with those clients to "take over" their cases, the sheer number of un-represented claimants will make taking over these cases time-consuming, costly and complex.

Considering the unprecedented nature of this problem, the Court is determined to fashion a framework that (1) encourages the representation of these policyholders, (2) ensures they are protected by permitting the filing of lawsuits on their behalf before the prescriptive period expires, and (3) protects attorneys taking over these cases by providing them with post-filing "breathing room" to fully investigate and vet these claims without fear of sanction.

Accordingly, the Court hereby orders the following:

1. <u>Automatic Stay for Certain Cases</u>

Effective immediately, upon the filing of any Hurricane Ida lawsuit in this District that is accompanied by a letter in which the filing attorney certifies that the plaintiff is a former client of MMA, that case shall be automatically stayed for 120 days.  The purpose of this stay is to allow for the protective filing in this District of Hurricane Ida lawsuits on behalf of former MMA clients whose claims new counsel may not have had the opportunity to fully investigate.  While counsel shall not be subject to Rule 11 scrutiny generally during the

duration of this stay, counsel are cautioned that this reprieve will <u>not</u> extend to any lawsuit filed without the consent of the named plaintiff.

At any point during the stay, the parties may move jointly to lift the stay. Conversely, the stay may be extended for good cause on motion by either party.

Upon the lifting of the stay, the case will be subject to this Court's Hurricane Ida CMO and Streamlined Settlement Program. Once the stay is lifted, counsel for Plaintiff(s) will be subject to all of the requirements of Rule 11.

2. <u>Extensions of Time to Serve under Rule 4</u>

It has come to the Court's attention that, in several cases pending in this District, MMA failed to properly and/or timely serve Defendant(s). For the sake of judicial efficiency and to eliminate the need for new counsel to re-file cases or file multiple motions to extend the Rule 4 deadline, the Court hereby orders that, upon the entry of an order substituting new counsel, counsel shall have 20 days to initiate service under Rule 4 if it has not already been effected. Counsel for all parties are encouraged to discuss and, wherever reasonable, waive the formal requirements of service under Rule 4.

3.   Waiver of Local Rule 83.2.11

Given MMA's inability to represent clients in Louisiana, the Court hereby orders that

the requirement of Local Rule 83.2.11 that motions to substitute counsel be filed jointly is

hereby waived for any case in which new counsel moves to enroll in cases on behalf of former

MMA clients.

**NEW ORLEANS, LOUISIANA,** this <u>21st</u> day of June, 2023.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**FOR THE EN BANC COURT**